## ROXBOROUGH *v.* ROXBOROUGH.

1. DIVORCE—PARTIES—ABSENCE OF CHILDREN.

Although ordinarily there are three parties to a divorce proceeding, the State is not particularly interested in a case where there are no children and the parties are apparently well able to take care of themselves.

2. SAME—PLAINTIFF'S CONDUCT.

In divorce cases, any conduct upon plaintiff's part in connection with the marriage relation which would be regarded by honest and fair-minded men as unjust, unlawful or contrary to right conduct and good morals is sufficient to bar his right to relief in view of maxim that one who has done iniquity shall not have relief in equity.

3. SAME—GAMBLING—EXTRAVAGANCE—ASSAULT.

Husband, plaintiff in divorce case, who was proprietor of a gambling business and frequently assaulted and beat his wife, *held*, not entitled to divorce because his wife gambled, was extravagant, assaulted him on one occasion and where, in general, her manner of life was patterned on his.

Appeal from Wayne; Campbell (Allan), J. Submitted October 2, 1934. (Docket No. 25, Calendar No. 37,526.) Decided December 10, 1934.

Bill by John W. Roxborough against Dora Roxborough for an absolute divorce. Bill dismissed. Plaintiff appeals. Affirmed.

*Henry B. Taliaferro* (*Robert J. Evans,* of counsel), for plaintiff.

*Wm. Henry Gallagher* (*S. Reymont Paul,* of counsel), for defendant.

POTTER, J. July 1, 1926, plaintiff and defendant were married. They had long been acquainted. October 7, 1931, he filed a bill for divorce against her upon the ground of extreme cruelty, claiming she nagged and fussed at him; was addicted to gambling; demanded money of him to pay her gambling losses; and threatened to leave him if he did not take care of her folks. He claims she absented herself from home; engaged in playing poker, or other games of chance; her telephone bills were excessive, sometimes reaching $100 a month; she spent money without regard to plaintiff's welfare; had many charge accounts with different mercantile establishments; interfered with him during his working hours; threatened him; caused him shame, and interfered with his work; shot at him; and on some occasions fought him. He asked an injunction restraining her from preventing his coming home; interfering with him in his home; withholding his clothes; interfering with his business; or inflicting personal violence upon him.

Defendant denied all the material allegations of plaintiff's bill of complaint.

"She denies that at one time she shot at him, but alleges that she did so only after she was being given an unmerciful beating from the plaintiff and alleges that it was necessary to arm herself with a revolver in order to protect herself and to save her life."

She affirmatively alleges:

"That the plaintiff is associating with other women and keeping and maintaining other women in luxuries, and that because this defendant has remonstrated with him he has cut off entirely her means of support."

From a decree dismissing his bill of complaint, plaintiff appeals.

Although ordinarily there are three parties to a divorce proceeding, the State is not here particularly interested, there being no children and the parties being apparently well able to take care of themselves. They lived luxuriously. Defendant had diamonds worth approximately $10,000; a grand piano which cost nearly $4,200. Plaintiff presented defendant with a Packard automobile as a present, while he drove a 12-cylinder Lincoln car. Defendant admits her monthly bills for household and living expenses ran about $1,000, defendant claiming all this was at the request and with the consent of the plaintiff who wore $7.50 socks, and at one time sported 250 neckties that cost $6.50 apiece. She claims, and the proof indicates, plaintiff desired to maintain the finest home of any colored man in Detroit.

Plaintiff was associated with one Julian Black, of Chicago, in the operation of a policy game and, perhaps, in other gambling enterprises; and it is claimed that, by reason of defendant's association with her husband, she acquired her taste for gambling.

The learned trial court, after enumerating the various grounds upon which plaintiff claimed relief, said:

"As to extravagance, it is the opinion of the court that the manner of living of the plaintiff over a period of their married life, was such as to definitely encourage extravagance. As to the gambling, it does not seem to the court that a court of equity will permit one engaged in the business that this plaintiff was engaged in to complain of gambling such as his wife indulged in. As to vocal abuse, the testimony on this point is not convincing. As to the fact that she beat him, the court is mindful of the testimony of the plaintiff that he frequently beat her. The incident with regard to the gun in her hands is not very clearly explained by either party. It seems to have been one of a series of quarrels in which both participated willingly, so that neither could be said to be guilty of cruelty to the other. It is quite conceivable that the conduct of this woman, if it had been indulged in toward a husband whose domestic life was uneventful and quiet, who himself avoided late hours and extravagant living, would have constituted ample ground for divorce. But, inasmuch as, generally speaking, her manner of life was simply patterned on his, it does not seem to this court possible to afford this plaintiff the relief he prays for."

Did the trial court err in refusing to grant plaintiff a decree for divorce? Does the testimony on appeal warrant, under the settled principles of equity, this court in granting a decree to plaintiff? Among the maxims of equity are, "He that comes into equity must come with clean hands;" "He who has committed iniquity shall not have equity;" "He who seeks equity must do equity."

Any conduct upon plaintiff's part in connection with the marriage relation here sought to be dis-

solved which would be regarded by honest and fair-minded men as unjust, unlawful or contrary to right conduct and good morals is sufficient to bar the right of plaintiff to relief upon the settled maxim that one who has done iniquity shall not have relief in equity, and no one without clean hands may come into a court of equity and invoke the conscience of the chancellor.

Plaintiff ought not to have relief because of defendant's misconduct if that misconduct was induced by his acts. He cannot, as the proprietor of a gambling business, well complain of his wife patronizing a business of the kind from which he earned a livelihood. If he frequently assaulted and beat her, which seems to be undisputed, although he says he did so only about once a week, he ought not to obtain relief in a court of equity on the ground that on one occasion she assaulted him.

It seems to be fairly well established by the testimony there has been a depression among plaintiff's more opulent patrons due to questionable economic prospects resulting in a diminution in their prodigality and his income; and the general incompatibility of the parties hereto has, it seems, been generated quite as much by a cessation of plaintiff's profuse expenditures as from any desire upon his part to curtail lavish personal expenditures which enchanted defendant.

Plaintiff claims his wife was frequently away from home, in Chicago and New York; and, while in Detroit, frequently stayed away all night. Defendant claims plaintiff consorted with other women, to her shock, shame and humiliation. The proof of plaintiff's misconduct with other women is not convincing and, in view of the disposition of the case by the trial court and here, is not important. Defendant does not ask for divorce.

The only question presented is whether plaintiff, under the facts, is entitled to relief. The trial court found he was not, and in that conclusion we agree.

The decree of the trial court is affirmed, with costs.

Nelson Sharpe, C. J., and North, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.